**SAND PRODUCTS CORPORATION**

v.

**The UNITED STATES.**

**No. 48756.**

United States Court of Claims.

Feb. 8, 1955.

Henry J. Friendly, New York City, Foster & Meadows, Detroit, Mich., Robert C. Barnard, Washington, D. C., and Cleary, Gottlieb, Friendly & Ball, New York City, on the briefs, for plaintiff.

Kendall M. Barnes, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

The issue presented in this case is just compensation for the taking of plaintiff's vessel, the *Octorara*, on July 28, 1942.

Almost the entire testimony in the case is on the cost of reproduction of the vessel at the time of the taking, which involves the proper rate of depreciation to be applied. We are of opinion that the cost of reproduction of this vessel is not the measure of just compensation; nor is it a factor to be taken into consideration, because, among other reasons, no one at the time of her taking would have thought of reproducing her.

However, we have made findings on the cost of reproduction, for use if either of the parties cares to file a petition for certiorari with the Supreme Court.

The *Octorara* was a passenger vessel, and until 1936 had been in service on the Great Lakes; but she was laid up by her former owners in that year, because she could no longer be operated profitably due to the greatly increased automobile traffic around the Great Lakes.

In 1940 plaintiff purchased her and the *Juniata* with the intention of replacing its smaller and slower vessels with one or both of them. It spent about $690,000 in converting the *Juniata* into a combined passenger and automobile carrier, and put her into service in lieu of its smaller and slower vessels, which it withdrew from service. Nothing was done to the *Octorara* and she lay tied up at the dock until defendant requisitioned her in 1942. Whether plaintiff would ever have converted her is not known, but if it had, it probably would have cost about the same amount as it cost to convert the *Juniata*.

In 1942 and until the end of the war all ship building plants were engaged in work for the Government and were not available for private work. The *Octorara* could not have been converted until

after the end of the war. It is doubtful that she would have been converted then, even if she had not been sunk. Apparently the *Juniata* could take care of all available passenger traffic on the Great Lakes, since no move had been made to convert the *Octorara* during the year the *Juniata* had been in operation. It is highly improbable that she would have been restored to her condition new at any time. Passenger service on the Great Lakes had declined to such an extent that there was left in 1942 but four vessels engaged in passenger service. A passenger ship had not been built for service on the Great Lakes since 1915 or 1916, a quarter of a century before the requisition.

■ From this it seems apparent that no prudent business man would have reproduced the *Octorara* in 1942, or at any time in the foreseeable future. This being true, the cost of reproduction new is not indicative of "just compensation." Smith-Douglass Co. v. United States, 116 F.Supp. 570, 126 Ct.Cl. 758, certiorari denied 348 U.S. 815, 75 S.Ct. 24; Id., 81 F.Supp. 215, 126 Ct.Cl. 789, 799–800, decided December 6, 1948; McDonald v. United States, 90 F.Supp. 703, 116 Ct.Cl. 734, 740–741, decided June 5, 1950.

All the testimony on the cost of reproduction is the cost of reproducing her in her original condition, to wit, as a passenger vessel. If it had been desired to convert her to a freighter, her hull, engines and auxiliaries would have been of value, but there is no testimony in the record of what this value was at the time of taking. The testimony as to these parts of the vessel was as to their reproduction cost new and reproduction cost depreciated.

The only other testimony in the record from which we can arrive at just compensation is (1) what plaintiff paid for the vessel; (2) what the Maritime Commission awarded; and (3) the amount the Maritime Commission paid for other vessels, although they were not shown to be comparable to the vessel in question.

In 1940 plaintiff bought the *Octorara* and the *Juniata* for $21,000 each. As stated, the *Octorara* had been tied up at the dock for four years. She was in need of repair. The hull was sound, but the engines, boilers, plumbing, and electrical system were in need of repair. The refrigeration was obsolete and the sanitary and sewer systems were in poor condition, portions of the decks and ladders were rotten from exposure, the exterior stairs were gone, the life boats had holes in them, the vessel needed painting throughout; she was generally in a run-down and dirty condition. No testimony has been introduced as to her value at the time of the taking in her then condition, to aid us in determining whether the amount paid for her was a fair price.

The Maritime Commission offered to pay plaintiff $25,000 as just compensation. How they arrived at this figure, we do not know.

In June and July 1942 defendant requisitioned a number of vessels on the Great Lakes of the approximate length and breadth, but of much greater net tonnage than the *Octorara*. The testimony does not show whether these were freight or passenger vessels, nor their condition. The prices paid for them run from $138,804 to $224,641.

■ This is all the testimony there is. It is indeed meager. The Commissioner of this court has found a value at the time and place of taking for the vessel, and its stores and equipment, of $62,000. We are not convinced that we should disturb this finding. Judgment will be entered for this amount, plus interest, as a part of just compensation, at the rate of four (4) per cent per annum from the date of the taking on July 28, 1942 to the date of payment of the judgment.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.